We'll go to the next case. It's number 19-3240 Brooks v. Mentor Worldwide. And Mr. Degali, I think you're up. Are you ready? Yes, I am, Your Honor. Thank you. If it pleases the court, I represent here today two ladies who got breast implants manufactured by Mentor. They live close to the state line, one in Kansas, one in Missouri. What I encourage you to do in this appeal is reverse the order below, because as a matter of law, it was error as to preemption and as to amendment of the complaint, an abuse of discretion exists. Now, with respect to the preemption argument, there's one aspect of this that the panel wouldn't be facially apparent to the panel. That relates to one of the supplemental authorities that was filed with Your Honors about a month ago. It was decided in July, and the case is called Mize. It's a California appellate-level decision, a three-judge panel in California. The reason that one is interesting and probably useful here is the lead counsel for Mize is my co-counsel in the underlying case here in Kansas. And for that reason, the complaint in Mize and the complaint in this case are materially identical. I borrowed my co-counsel's complaint as a template when I created the complaint for Ms. Brooks and Ms. Gale. And the reason that that can be helpful to the court during its analysis is if one reads through the Mize opinion, you'll see areas of portions of text that are quoted verbatim. Those actually match identically the complaint in the Brooks and Gale matter. In the underlying case in the district judge in Kansas, she proceeded through that complaint and found that portions of it were difficult to follow. She found that all of it was subject to preemption and that none of it was, or large portions of it, were inadequately pleaded. Now, this Mize court in California took exactly the same complaint and went through it and found none of it to be preempted and all of it to be adequately pleaded. For that reason, when the court's analyzing these issues, you can go to sort of sit these two opinions side by side and see the contrasting arguments that exist before you today spelled out between judges. Now, that particular complaint has served me as a template in other jurisdictions. You'll find another case in this record called Grab It, which is pending in Chicago before the Northern District of Illinois. Judge Feinerman there took this same complaint and he did not uphold it in its entirety like the California court did, but he did allow it to survive with respect to the failure to warn claims. So at least to that extent, it might be useful. Well, again, it is materially the same complaint with respect to allegations involving what Mentor did. Now here, referencing what the judge below did in the district court in Kansas, in analyzing the preemption claim, she started with failure to warn. And she started with an allegation that she says in the complaint that the plaintiffs allege a duty to warn patients. There's not a duty to warn patients directly in this complaint. There is a duty to warn patients indirectly in the complaint by virtue of reporting to FDA. There is a federal duty to report to FDA and there is a state law duty generally to report dangers in your product. And that state law duty is not stricter, if you will, than the federal duty. So the idea, there is no allegation in this complaint about direct duty to warn patients at all or direct failure to do that. She proceeded then to what she deemed the failure to warn the FDA. I think that's probably just a looser misnomer in that there is no failure to warn the FDA. It's a failure to report events to the FDA that are required by federal law to be reported. That duty to report adverse events to the FDA has been recognized by the Supreme Court in Regal and the Ninth Circuit in Stengel. So the duty to report is clear. It's right in the act. What state law authority is there that requires manufacturers to report adverse events? I don't know that there's a state law requiring adverse events reporting. There's a state law requiring disclosure. There is, that is, there is a common law failure to warn in the state of Kansas. To warn whom? There is a, under Patton and Wooderson, a duty to report to warn the medical community.  And the allegation of this complaint is that reporting to the FDA is reporting to the medical community. Now, when, when, let me, let me, let me stop. Let me stop you right there. I mean, so the idea is, I guess the next step is that the medical community is somehow going to, on their own volition, go pull up the information you reported to the FDA. Yes, sir. The idea is that the MAUD database is created for that reason, to make information about adverse events available to the medical community. Then they hopefully will take that information into account when they address their patients. Now, the judge below said that's too speculative to, to, under Twombly, you can't connect this idea that reporting to the FDA is going to lead the public to have more information about the dangers inherent in their products. Again, you can follow through the My's opinion and see exactly the same, exactly this opposite conclusion reached insofar as the reasonableness of the inference. The idea is if you're not reporting to the FDA or you are under-reporting or falsely reporting, then if it is far more likely the medical community will not have that information. So, in this complaint, the allegation is that reporting to the FDA is the means of reporting to the medical community as is required by Kansas state law. Now, there is reference as well to failure to warn physicians in this complaint. There is not, there's a, there's the same allegation with respect to indirectly giving notice to physicians.  The, the, there is, there is allegations complaining about labels. That would be a direct, a way to directly give notice or warning to the, to the medical community. And her honor said that you can't have a cause of action based on a duty to breaching a duty regarding labeling because that's been addressed by Regal and elsewhere. That is true, but the allegation here is that, not that they should have done something to their warning. It's really the same kind of reporting requirement that if they know something is wrong with the warning because it's now inconsistent with known information, they have a duty to report to FDA. It's that failure to report, not the failure to change your label, that results in advice to the medical community. And her honor didn't, in my opinion, saw that portion of the complaint. Her honor did not. And it was hopefully not wordsmithing on my part. But in any event, the labeling claims, there's no, we don't intend to allege that Mentor has liability simply by virtue of not having changed its label. It would be by not having reported to the FDA that it should change its label. So, for example, she called into question the allegation that there is a procedure Mentor can follow, it can follow, when it discovers that something's wrong with its label. Let me ask you a general question to try to get a specific feel. You're familiar with the concept of the narrow gap between implied and expressed preemption, and you're saying all of your claims fit through that narrow gap. What's an example of a claim that doesn't, then? The one I just mentioned would be a claim attacking the duty to accurately create a label or change a label, which we didn't intend, don't intend to attack in this complaint. Most design defects probably would be preempted. That would seem to flow from at least regal. So, there's no argument here that preemption isn't entirely proper in some instances. It is, and in some others, it probably is entirely improper. I think the clearest example of that would be most manufacturing defects. I've not seen an argument, a policy argument laid out in any of the decisions about why there should be some preemption of manufacturing defects. That is, if the government approves the design of a product in some widget, and it's got 10 screws, and they just start manufacturing it with eight screws, and there's a couple of them missing all the time. This is a badly made, bad assembly line resulting in a bad product all the time. FDA wouldn't want that to happen. There shouldn't be any prohibition on that happening. That kind of manufacturing defect really shouldn't be preempted at all. It's simply they didn't, and regal says they have an obligation to manufacture products substantially the way they were approved with virtually no deviation from the specifications. Unfortunately, we have a limited clock, and I don't want to chew up all your time on that, but I do want to try to pare things down. Do you take issue with the district court's negligent per se, as well as learned intermediary rationales? Learned intermediary does exist, obviously, in the state of Kansas. In this instance, the learned intermediary doctrine can apply. The Wooderson decision establishes that there's a duty to warn the medical community if you know about a defect. The learned intermediary concept assumes the medical community has relevant information. If you're simply misrepresenting the state of your product and its known risks to the medical community, then the learned intermediary is by definition not learned. In closing, Your Honors, there's an argument laid out in the briefs that I'd like to supplement a little bit or discuss a little bit. Let me interrupt for a moment. There are a lot of issues here, and I think we need to explore them. Judge Phillips, please don't feel rushed to get through the issues that interest you. Let's take the time to go through this. I'm sorry, Your Honor. That's not a license for you to wander, Mr. Dugali. If I detoured and nobody expected that, I apologize for that, Your Honors. If there is an issue that I hope I can cover for a little bit before closing, but if Your Honors have no questions, that's of course great. It is amending the complaint. In this case, Your Honor... Let's see if Judge Phillips had some follow-up on what he raised. No, I don't. Thank you. Let me go ahead and break in while I can. What do you have as far as a claim that doesn't involve a violation of the federal regulatory scheme? If that didn't exist, what would you have? I hope I don't have any of those because that would probably be preempted. If I was prosecuting a state law claim with no parallel federal claim, we wouldn't be here at all. A federal claim with no parallel state law claim would be a Buckman preemption. So there's this sort of grid, you know, like the win-win or two flips of a coin box of four possibilities. And as I see it, there's this... If you allege a violation of a state requirement and not a federal one, there's preemption under Kaplinger, McMullen, and others. If you allege a violation of federal and not state, there's preemption under Buckman. If you allege a violation of federal and state, but state might be stricter than federal, there's preemption under Lohr. The only way you survive is if you allege a violation of a federal requirement and a state requirement and the two are parallel. So do you give up on appeal your negligence per se claim? Essentially, Your Honor, yes. For the reason that it was not pleaded as a separate cause of action. When you read Her Honor's order, it sounds as if she's dismissing a cause of action for negligence per se. It's actually combined with the negligence count. For the reason that it should not be in Kansas, in many states, a standalone cause of action at all. It's really a jury instruction or a presumption that might apply that can arise by virtue of a statute. In Kansas, it can arise by virtue of a statute that establishes a standard of care. Whether you get negligence per se or not, it looks very unlikely in the state of Kansas. And for that reason, Your Honor, to the extent she was dismissing something she characterized as a cause of action, we didn't really intend to be bringing one at all. Putting it in the style of that count was just an indication to give notice that perhaps we'd like a presumption based on a jury instruction someday. Your Honors, the last point is the failure to allow leave to amend. There is a decision of this court, Glenn, that is squarely on point, but it applied to a dismissal and an inartfully pleaded RICO claim. Here we have an affirmative defense that's being raised and the case being dismissed. I think it's very distinguishable based on the available information that is discussed in Kaplan there. Defending against this dismissal. Thank you, Your Honor. I'm going to pursue the manufacturing defect claim. First, educate me. I hope this is from indisputable sources because I'm not sure it's alleged in the complaint, but what is the understanding regarding leakage of these implants? Does the FDA recognize that that can happen regardless of how well it's manufactured, but you're saying it was manufactured poorly? Yes, Your Honor. The extent to which there's a concept called gel bleed, that silicone actually bleeds through the shell of the product. The extent to which Mentor told FDA that that will happen in certain volumes or over certain amounts of time is highly disputed. Because this is an affirmative defense, I don't have discovery about that issue other than lots of rumor and hearsay and some information I do possess that leads me to want a lot more. Makes it a little different than a typical Route 12 dismissal when you're dismissing based on affirmative defense. And that manufacturing defect, one thing Her Honor did not note in this, she discussed the Amber Brooks situation, for example, and mentioned that she had her implant explanted in a short period of time. She was very sick at six months and it was taken out in less than a year. And when it was taken out, she did not note in her order. It is in the complaint. At 11 months when that was removed, Ms. Brooks has silicone floating in her chest. And there'd be an inference that that's a very short time. I'm sorry? Excuse me. I was saying we're going to pursue this, but please be very responsive to the specific questions. My concern here has to do with the sufficiency of the allegations of manufacturing defect. There's a good point that's been made by other courts that a lot of the information is privileged or kept private by the FDA. So discovery is important in determining specifically what happened. But it seems to me that your allegations are so general and vague that if the complaint regarding manufacturing defect in this case is adequate, then there isn't a single manufacturing defect claim that could be dismissed as inadequate. You've got to do something. You've got to say something about what happened. The one case that cited as sufficient, as I recall, or one of the cases, maybe the leading case, pointed out that the FDA had warned the company that there were problems with it. There was a recall. All this before the implant was implanted in the plaintiff in that case. So why wouldn't your argument that you've adequately alleged a manufacturing defect enable every complaint of manufacturing defect to escape dismissal? I think a very distinguishing about this complaint is it contains substantial allegations about internal reporting by whistleblowers to FDA about manufacturing issues. That wouldn't exist in any other complaint. And it's something we have to be able to get discovery about to find more about. In fact, this complaint has allegations in it about that that MISE does not even have. With respect to 2005 and 2006 whistleblowers, there's an allegation in this complaint that Mentor destroyed the evidence relating to them. That's in paragraphs 90 and 91 of the complaint. I thought those reports related to something that was then corrected or no longer pursued by FDA. Don't you need something that relates to the manufacturing at the time of the manufacture of the implants that your clients received? There's two issues there. There are prior reports of such activity in late 90s and early aughts that were part of a consent decree. The MISE decision said that doesn't mean they actually fixed it. The 2005 and 2006 is a different issue. That was not part of the consent decree. It came up at a later time. Nobody has gotten to the bottom of it. The ones from the 90s and aughts, there was a discovery about it. There's been zero discovery about this, except to the extent it's ongoing in Chicago. Their mentors never had to produce information relating to these whistleblowers. It never has to the extent. The allegation would be that it once existed and now it doesn't. Thank you, counsel. Mr. Ravelin, you're on. May it please the court. Thank you, your honor. Dustin Rolland from Tucker Ellis on behalf of the Appalachian Mentor Worldwide LLC. A lot of ground to cover with Mr. Degali's comments. I'll try to be as responsive as I can to your honors. First of all, with respect to the Mize decision. Let's keep in mind the Mize decision was the reversal of the trial court sustaining mentors demur under California's more liberal pleading rules. This was not in federal court. This was not a Twombly-Iqbal plausibility pleading standard. The court did not find that the claims were not preempted. The court said, the plaintiff has said enough at this initial stage in our more liberal pleading state. So again, to the extent we're going to look at Mize, it is not a Twombly-Iqbal plausibility pleading type situation. Mr. Degali has omitted to acknowledge that there are 20 federal courts that have dismissed at the motion to dismiss stage identical allegations and identical complaints finding that the allegations are either expressly, impliedly preempted, or do not satisfy Twombly-Iqbal. I'd like to kind of get to, I think, what Judge Carson was getting at is there is no Kansas state parallel law that requires a medical device manufacturer to report adverse events to the FDA. That duty is purely a creature of federal law created through the medical device amendments to the Food, Drug, and Cosmetic Act. Plaintiff has never pointed to that parallel state law as a statute, a regulation. They simply say there's a generalized common law duty to warn the medical community. As Judge Vredel found here, Mentor discharged that duty as a matter of law with respect to its warnings that are FDA approved and in the box. And that's how Mentor, through the Learn Intermediate Doctrine, discharges its duty to warn by warning physicians of the known inherent risks of breast implants. Judge Hart, you asked me at the end, what does the FDA know about leakage, gel bleed, and rupture? They know all about it. That is why it's actually all over the judicially noticed warnings that Mentor provides to physicians. Gel bleed and leakage and rupture are the most common adverse events associated with silicone gel breast implants. The FDA knows about them. That's in the FDA required warnings. Absolutely, all over them. And that's what Judge Vredel found. And to the extent Mr. Degali is saying that what we told them through the pre-market approval process over time, our clinical trials, what we told them about what we knew about gel bleed or leakage or rupture, what we told the FDA is in dispute, that is a classic Buckman fraud on the FDA claim. It's what we think that you lied to the FDA to get your approval. And that's clearly impliedly preempted. You cannot bring that claim. The only party that can bring that claim is the U.S. government because the medical device amendments contain an implied preemption provision that says any actions to enforce it must be in the name of the United States. There is no private right of action. Ms. Brooks and Ms. Gale can't sue Mentor saying we think you lied to the FDA about what you knew about rupture. But they can sue for manufacturing defect that causes more leakage than is apparently inherent in the device. Isn't that correct? Well, I would say that they did not allege that it caused more leakage than is inherent and I'm not sure that there's a specification of what leakage is acceptable. It's in the case... They're claiming the product was defective and the defect is that it caused the injury to the plane of sear and the injury was caused by leakage. So say there was a defect in manufacturing. They were using an inferior material to encompass the gel or they treated it too high a temperature or something like that. How is a plaintiff to bring a claim like that without discovery first? Your Honor, So first of all, to backtrack a little bit, if we look at the plaintiff's brief at footnote 14, they state a proposition of law quoting Willicke-Gables in 11th Circuit case and they say parallel claims must be specifically identified in the initial pleading by setting forth facts that point to specific violations of PMA requirements. That's in their brief as a proposition of law. It is entirely correct and if you look at their complaint, there are no specifically identified PMA requirements. There are no facts that show that mentor violated those requirements. The requirements that they cite, they cite to a regulation. Generic regulations, Your Honor, but if you read their complaint, for instance, you gave an example. What if the shell was not the right kind of silicone? Mr. Degali gave an example of you have a widget comes off the assembly line supposed to have 10 screws and only has eight. Plaintiffs have not made any factual allegations in the complaint along those lines. The valve was in the wrong place. The silicone was not of the correct grade. They have not. And how can they without discovery? Well, Your Honor, I think you gave an excellent example. Plaintiffs do it all the time. They point to something like a recall, a warning letter, a 483 FDA observation, a clinical trial, that's reported in a journal article. It says, hey, we've noticed a higher rate of this unreported adverse event. The manufacturer is not telling anyone about all the time. There are factual predicates that plaintiffs point to as the basis for their claims and what they're publicly available. These are publicly available sources. Sure. Or things reported by the FDA. And, you know, the I think where you're going to go to is the dicta and Kaplinger that talks about Bausch. And shouldn't we give plaintiffs discovery a chance to to do discovery about the confidential information? And what I would say, Your Honor, is a number of courts have rejected that premise. It runs smack into Rule 8 and Rule 11. It runs smack into Twombly-Iqbal. Iqbal says that it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. And that's what this complaint is. Conclusions. The conclusion is we have two plaintiffs with breast implants. They believe they experienced adverse events. Therefore, their implants must have been defectively manufactured. That is not an inference that flows from those allegations. As we talked about, those are inherent, warned about known risks of that device. The whistleblower comments that Mr. DiGale referred to. Well, as he said, some of the whistleblower comments are from the 1990s. I'm talking about the more recent ones. The more recent ones. There's FDA statements that they were fully investigated. They were also before premarket approval was granted. And so the FDA had an opportunity to investigate those, did investigate those, and granted premarket approval in any way. And again, I believe that runs into a fraud on the FDA claim. If you're saying we were lying to the FDA during our premarket approval process, that is a fraud on the FDA claim, which is impliedly preempted by Buckman. Well, what if it's a, not a fraud on the FDA, but incompetence of the FDA claim? The plaintiffs don't have an incompetence of the FDA claim, Your Honor. They have a claim of defective manufacture. And the fact that the FDA approved it could be accounted for by FDA incompetence. What can they bring? Can't they bring a claim that this was defectively manufactured under FDA regulations? FDA should have stopped it, but through incompetence, it failed. That wouldn't be a way to proceed? No, Your Honor. Again, as the Supreme Court has told us in Regal and Buckman, that type of claim is preempted, and that type of claim cannot survive. And again, we're not saying there is absolutely case law, and there are cases that get around preemption, that narrow gap that Judge Phillips, I believe, talked about with a manufacturing defect claim where there are plausible, factual allegations in the complaint that the implant came off the assembly line wrong. It did not meet design specifications. Here what we have are implants that meet design specifications, had an expected adverse event, and the plaintiff says, well, because I had a failure, I think there must have been a manufacturing defect. But if you go through the complaint, nowhere will you find the facts of what was violated or what the defect is. And again, Your Honor, going back to the failure to report claim, again, what Judge Vredel, I think, found in terms of, it was both impliedly preempted, because again, this is a preacher of pure federal law. Reporting to the FDA does not arise under state law. And the other aspect was insufficiently pled, too conclusory and speculative. And because what the plaintiff's claim really is, is if Mentor had done its post-approval studies differently, used different methodology, population sets, statistical analysis, they may have found additional adverse events. If they found additional adverse events, some of those adverse events may have had to be reported to the FDA. If they reported those adverse events to the FDA, the FDA may have placed them in the publicly available MAA database. Now, actually sitting here today, we know they would not have. Mentor was enrolled in a different MAA database. And if they had gone to the MAA database and were publicly available, which was a matter of FDA discretion, that doctors may have reviewed the MAA database in terms of getting their information, which the complaint does not allege that the plaintiff's treating physicians here did that. And if their doctors used the MAA database to inform themselves about risks of products rather than the FDA approved warnings in the box, that MAA database and those adverse events would have informed their treatment decisions in some way. Judge Vredel, I think, appropriately found that type of leap of inferences, ifs and maybes, is far too speculative and conclusory under a fall to get you where you need to be. Again, I believe the plaintiffs admit why this case failed at the motion to dismiss stage in their brief. At page 31, they say, the district court overlooked the complaint's allegations that Mentor violated the duties it owed consumers, despite its apparent fulfillment of the premarket approval process. And that's exactly why Judge Vredel granted the motion to dismiss, because under currently existing law on preemption, if Mentor complies with its premarket approval, these state law tort claims are preempted. They are different from and in addition to what the federal requirements are. Your Honors, quickly on the motion for leap to amend, I am puzzled by Mr. Degali's statement that there was an abuse of discretion. We have Glenn, we have, I believe, nine other panels of this court that have considered the exact same argument the plaintiffs are making here, which is that without making a motion for leap to amend or complying with the district court's local rule, 15.1, that you can have a single sentence or footnote in opposition to a motion to dismiss that says we would like leap to amend if you're going to grant the motion to dismiss, and that is good enough. And there are, I think, 10 panels of this court that have said that is not an abuse of discretion. I will point out that the district court at footnote two of its opinion said, I will not grant the plaintiff's motion to amend at this time. I think giving the plaintiffs a hint that if you want leap to amend, you need to ask for it. They did not take that hint. They simply noticed their appeal. They did not move under rule 59 or 60. And as this court and Glenn held, appellants availed themselves of none of their legal options. Appellant's failures are well beyond mere technicalities, and this court will not protect them from their own inaction. It is clear that what plaintiffs did here in strategic effort to not dilute, as they state, their primary argument is not sufficient to preserve a right to leave to amend. And the court did not abuse its discretion in denying their leave to amend and granting the motion to dismiss with prejudice. Your Honor, for all of these reasons, we respectfully ask that you affirm the decision of the district court granting mentors motion to dismiss with prejudice and denying plaintiffs motion for leave to amend. Thank you, Your Honor. Thank you very much. Thank you, counsel. Mr. Dugali, we've already, we've used up six more minutes than opposing counsel did, but I'm going to give you a minute if you have something more to say in response. Your Honor, thank you for that. With respect to leave to amend, I just ask you to distinguish Glenn from this for the reason I started to outline is that this is exactly what's outlined in the Kaplinger decision about Bausch. That when one is defending against dismissal that is based on an affirmative defense, the defendant has this burden here, so it's not like a typical Rule 12 where you're just looking at whether my allegations are okay, not the strength of their defense that I've not had any discovery against. In this situation, the proposed amended complaint would have had to have been clairvoyant about the judge's ruling on six or seven different issues and give her sort of a menu of which ones she might dismiss and which ones she might not. The rule itself has a memo requiring for anyone filing a motion for leave to amend. It doesn't give notice to somebody that isn't filing a motion for leave to amend right now. But in any events, Your Honor, I thank you for your time. Thank you, counsel. Case is submitted. Counselor excused.